## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

|  |  |  |
|---|---|---|
| JOHN KEENAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Docket No. 1:23-cv-00050-NT |
| | ) | |
| TOWN OF SULLIVAN, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER ON DEFENDANTS' MOTIONS TO DISMISS
## AND PLAINTIFF'S MOTION FOR JUDICIAL REVIEW

Before me is Defendant Town of Sullivan's motion to dismiss (ECF No. 7), Plaintiff John Keenan's motion for judicial review (ECF No. 10), and Defendants Maine State Police and Maine State Trooper Gavin Endre's (together, "**State Defendants**") motion to dismiss (ECF No. 12). For the reasons stated below, the Plaintiff's motion for judicial review is **DENIED**, the State Defendants' motion to dismiss is **GRANTED**, and the Town of Sullivan's motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**.

## BACKGROUND[1]

The Plaintiff, John Keenan, is a resident of Sullivan, Maine ("**Town**") and has gone to the Sullivan Town Hall ("**Town Hall**") and spoken with Town employees and

---

[1]       The facts below are largely drawn from the allegations in the Complaint, which I take as true for the purposes of deciding a motion to dismiss. *Alston v. Spiegel*, 988 F.3d 564, 571 (1st Cir. 2021). Although the Plaintiff has peppered his oppositions to the Defendants' motions to dismiss with additional factual allegations, "[a] Rule 12(b)(6) motion tests the sufficiency of the facts and inferences in a complaint, not the sufficiency of the facts and inferences in a lawyer's memorandum." *Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO, Loc. Lodge No. 1821 v. Verso Corp.*, 153 F. Supp. 3d 419, 430–31 (D. Me. 2015). As will later be discussed, Mr. Keenan has been proceeding pro se

elected officials on a number of occasions. Compl. ¶¶ 1, 9 (ECF No. 1). In 2019, Mr. Keenan attended approximately seven Town select board meetings at the Town Hall. Compl. ¶ 10. During these meetings, he raised issues about the voting procedures for Town selectmen and for the moderator of Town meetings. Compl. ¶ 11. Mr. Keenan objected to the Town officials appointing a moderator for the Town's meetings, rather than having the moderator elected, as he believed was required under Maine state law. Compl. ¶ 16. He also raised questions about Town financial matters, including the compensation paid to the Town's three selectmen. Compl. ¶ 10. During and after these meetings, Mr. Keenan met resistance from the Town manager, Robert Eaton, the Town clerk, Stacy Tozier, and the Town treasurer, Lynn Dunbar. Compl. ¶ 12. During one of Mr. Keenan's visits to the Town Hall in the summer of 2019, Town officials called the Hancock County Sheriff's office, and deputies were sent to the Town Hall to ask Mr. Keenan to leave the premises. Compl. ¶ 13.

In 2020, Mr. Keenan was nominated to run for the position of Town selectman. Compl. ¶ 14. The Town clerk at the time, Stacy Tozier, refused to tell Mr. Keenan

---

throughout much of the briefing schedule, and I am "mindful of the challenges faced by pro se litigants and construe [his] arguments liberally." *Vieira v. De Souza*, 22 F.4th 304, 311 (1st Cir. 2022). Even so, I consider the facts in his responses, but not alleged in the Complaint, "only to the extent they shed light on the facts and theories actually alleged" in the Complaint. *Verso Corp.*, 153 F. Supp. 3d at 430.

In addition, I consider the documents attached to the State Defendants' motion to dismiss. "Ordinarily, [on a motion to dismiss,] a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment." *Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001). There are, however, narrow exceptions "for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint." *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993). Here, the State Defendants have provided me with copies of the docket and two court filings from Mr. Keenan's criminal trespass case in state court. Those documents are relevant public records and their authenticity has not been disputed, so I consider them for purposes of the State Defendants' motion to dismiss.

when the election for selectman would be held. Compl. ¶ 15. In May of 2020, Mr. Keenan sent Ms. Tozier an email again asking about the scheduling of the upcoming selectman election and also asking for permission to attend the Town's May 11, 2020 monthly planning board meeting. Compl. ¶ 17.

On May 11, 2020, the Town held a select board meeting. Compl. ¶ 18.[2] Mr. Keenan tried to place an item on the agenda for this meeting, but Town officials refused to place his proposed item on the agenda. Compl. ¶ 18. The May 11th select board meeting was conducted over Zoom, and the Town manager's wife, Candy Eaton, served as the administrator. Compl. ¶ 20. During the meeting, Mr. Keenan asked to participate in the public comment portion. Compl. ¶ 19. The moderator of the May 11th meeting perfunctorily called for public comment, and Candy Eaton disabled Mr. Keenan's ability to verbally participate in the public comment session, thus cutting off Mr. Keenan's ability to comment at the meeting. Compl. ¶¶ 20–21.

Afterward, Mr. Keenan drove to the Town Hall with a written list of the questions he had intended to present during the public comment portion of the May 11th meeting. Compl. ¶ 22. When he tried to give his list of questions to those present at the Town Hall, one of the Town selectmen called 911 asking for law enforcement assistance. Compl. ¶ 23. Mr. Keenan left Town Hall before the police arrived, but about thirty minutes later, Defendant Gavin Endre,[3] a Maine State Trooper, came to

---

[2]    This May 11th meeting of the Town select board appears to be different than the May 11th meeting of the planning board that Mr. Keenan asked about via email. *See* Compl. ¶ 17 (ECF No. 1). There is nothing in the Complaint about what, if anything, came of his request to be permitted to attend the planning board meeting.

[3]    The caption and opening paragraph of the Complaint refer to him as "Andre Gavin" but thereafter he is consistently called Gavin Endre or Trooper Endre. The State Defendants' motion to

3

Mr. Keenan's house and served him with a trespass notice. Compl. ¶¶ 24–25. The trespass notice was signed by Trooper Endre and notified Mr. Keenan that he was "forbidden from entering or remaining in or on the premises" of the "Sullivan Town Hall/Office." Compl. ¶ 25 & Ex. A (ECF No. 1-1).

In November of 2020, on Election Day, Ms. Tozier physically blocked Mr. Keenan from entering Town Hall, his lawful polling place, to cast his ballot. Compl. ¶¶ 26–27. She cited the trespass notice as support for her refusal to permit Mr. Keenan to enter. Compl. ¶ 27. Mr. Keenan tried to give his ballot to the new Town clerk[4] but Ms. Tozier instructed the clerk not to take the ballot. Compl. ¶ 28.

On March 23, 2021, Ms. Tozier refused to let Mr. Keenan attend a Town planning board meeting being held at the Town Hall, citing the trespass notice. Compl. ¶ 29. On June 8, 2021, Mr. Keenan attended a Town meeting at Town Hall. A Town official called law enforcement, and two Maine State Troopers came and threatened to arrest Mr. Keenan during the meeting. Compl. ¶ 32.

That same day, June 8, 2021, Mr. Keenan had spoken by telephone with Ms. Dunbar, then the acting Town clerk, and asked to vote in that day's election for Town selectman. Compl. ¶ 30. Ms. Dunbar told Mr. Keenan to call back "tomorrow" (at which point it would be too late for Mr. Keenan to vote). Compl. ¶ 30. Later that same day, Mr. Keenan verbally requested a ballot with which to vote, and Ms. Dunbar

dismiss also refers to this Defendant as Gavin Endre or Trooper Endre, so I assume that is his name and do the same.

[4]   By this time, Ms. Tozier had been promoted from Town clerk to Town manager. Compl. ¶ 17.

responded: "[T]ough luck. You're not going to vote today. Call me tomorrow." Compl. ¶ 31.

On Election Day in November of 2021, Mr. Keenan again went to Town Hall to vote. Compl. ¶ 33. When he asked the new Town clerk for a ballot, she refused to give him one. Compl. ¶ 33. Ms. Tozier directed the Town clerk not to provide Mr. Keenan with a ballot. Compl. ¶ 33. Mr. Keenan asked the Town clerk for a written acknowledgement of her having refused Mr. Keenan a ballot, but Ms. Dunbar directed the clerk to not put anything in writing. Compl. ¶ 33. Shortly thereafter, at Ms. Tozier's request, Trooper Endre arrived at Town Hall. Compl. ¶ 33.

On February 14, 2022, Mr. Keenan went to Town Hall and voted. Compl. ¶ 34. On or about March 2, 2022, Maine State Trooper Travis Chapman informed Mr. Keenan that he needed to serve a summons on him for criminal trespass. Compl. ¶ 35. Mr. Keenan received the summons the next day, and it summonsed him for having gone to vote at Town Hall on February 14, 2022. Compl. ¶ 36. Mr. Keenan was later charged in a one-count complaint of criminal trespass for having entered Town Hall "in defiance of a lawful order not to enter which was personally communicated to him by [the Town]." Compl. ¶ 37 & Ex. B (ECF No. 1-2). That criminal trespass proceeding is still pending in state court. Compl. ¶ 38.

Mr. Keenan commenced this action on January 31, 2023. In his Complaint, he alleges that the Town and the State Defendants violated his rights to freedom of speech and freedom of expression and his right to petition the Town under the First and Fourteenth Amendments to the United States Constitution by issuing him the

trespass notice and by enforcing that trespass notice. Compl. ¶¶ 39–44. He alleges that the Defendants' conduct violated those same rights under the Maine Constitution. Compl. ¶¶ 45–50. Mr. Keenan also alleges that that same conduct violated his Fourteenth Amendment liberty right to petition and his rights to substantive and procedural due process under both the federal and state constitutions. Compl. ¶¶ 51–74. In addition, he alleges that the Defendants violated his Fourteenth Amendment liberty right to be present in a public place and his rights to substantive and procedural due process under the United States and Maine constitutions when they issued and enforced the trespass notice against him. Compl. ¶¶ 74–98. Mr. Keenan also claims that the Defendants' conduct violated his Fourteenth Amendment liberty right to vote and his rights to substantive and procedural due process under both constitutions. Compl. ¶¶ 99–122. Finally, he claims that the Defendants violated his Fourteenth Amendment right under the United States Constitution and his Article I, Section 6-A right under the Maine Constitution to equal protection of the law because his treatment was in direct contrast to those similarly situated. Compl. ¶¶ 123–134.

On February 16, 2023, the Town filed a motion to dismiss the Complaint ("**Town's Motion**"). Def. Town of Sullivan's Mot. to Dismiss Pl. Keenan's Compl. Pursuant to F.R.Civ.P. Rule 12(b)(6) ("**Town's MTD**") (ECF No. 7). On March 31, 2023, the State Defendants filed their own motion to dismiss ("**State's Motion**").

State Defs.' Mot. to Dismiss ("**State's MTD**") (ECF No. 12). Both motions are now fully briefed.[5]

Meanwhile, earlier in March, a Single Justice of the Maine Supreme Judicial Court suspended Mr. Keenan's attorney, Scott L. Fenstermaker, from the practice of law. *See* No. 2:23-mc-00106-JDL, *Ex Parte* Order of Immediate Interim Suspension, (ECF No. 1-1). The Chief Judge of the United States District Court for the District of Maine immediately suspended Attorney Fenstermaker from the practice of law in this Court and then ordered him to show cause as to why identical discipline should not be imposed in this Court. *See In re Fenstermaker*, No. 2:23-mc-00106-JDL, Order to Show Cause (ECF No. 1) (D. Me. Mar. 23, 2023). Attorney Fenstermaker opposed the suspension and also filed a motion for the recusal of Chief Judge Levy. *In re Fenstermaker*, No. 2:23-cv-00174-JDL, Resp't Scott L. Fenstermaker, Esq.'s Mem. of Law in Supp. of His Appl. to Vacate This Ct.'s Mar. 21, 2023 Interim Suspension (ECF No. 3) (D. Me. May 2, 2023); *In re Fenstermaker*, No. 2:23-cv-00174-JDL, Resp't Scott L. Fenstermaker, Esq.'s Mot. for the Recusal of Chief U.S. District Ct. Judge John D. Levy Pursuant to 28 U.S.C. §§ 455(a) and (b)(1) (ECF No. 4) (D. Me. May 2, 2023). On June 16, 2023, following disciplinary proceedings, Chief Judge Levy

---

[5]     In fact, the motions are more than fully briefed because, on May 22, 2023 (after his attorney had already filed an opposition to the Town's motion to dismiss), Mr. Keenan filed his own pro se "Response to Town of Sullivan Motion to Dismiss" (ECF No. 18), to which the Town replied (ECF No. 20), and he filed 118 pages of additional attachments in support of his opposition (ECF No. 19). On June 5, 2023, Mr. Keenan filed what he calls a "Second Response" to the Town's motion to dismiss (ECF No. 22) and to the State's motion to dismiss (ECF No. 23). These types of sur-replies, however, are not permitted without leave of Court. *See* D. Me. Local R. 7. Because neither Mr. Keenan nor the Town sought permission to file these additional documents, I do not consider them. *See, e.g.*, *Cataldo v. U.S. Dep't of Just.*, No. 99-264-B-C, 2000 WL 760960, at *2 n.4 (D. Me. May 15, 2000) ("The plaintiff did not seek leave of court to file this sur-reply memorandum and therefore it will not be considered.").

entered an order denying Attorney Fenstermaker's motion for recusal and maintaining Attorney Fenstermaker's suspension, finding that he had failed to show that the federal court should not impose discipline identical to that imposed by the Maine state court. *In re Fenstermaker*, No. 2:23-cv-00174-JDL, Order ("**JDL Order**") (ECF No. 12) (D. Me. June 16, 2023).

Because Attorney Fenstermaker was suspended from the practice of law in this Court, his representation of Mr. Keenan in this litigation was terminated. Since Attorney Fenstermaker's suspension on March 21, 2023, Mr. Keenan has been proceeding pro se. In addition to responding to the Town's Motion and the State's Motion, Mr. Keenan filed a "Judicial Review Request." Judicial Review Request (ECF No. 10). The request for judicial review is directed to Chief Judge Levy and asks: "for explanation of the reasoning the court enacted its judicial order of removal of counsel prior to the settlement of both Civil and Criminal Docketed cases outstanding currently." Judicial Review Request 1. Because Mr. Keenan has the instant case pending before me, Judge Levy referred the Judicial Review Request to me for consideration.

## DISCUSSION

### I. The Plaintiff's Motion for Judicial Review

The Plaintiff's request for judicial review consists of one typewritten page and then a three-page handwritten letter. It is difficult at times to decipher, but it appears that it is primarily directed at his criminal case in state court where he "was appointed defense counsel Mr. Scott Fenstermaker Esq." Judicial Review Request,

Ex. A at 4 (ECF No. 10-1). Mr. Keenan writes that twice the state interfered between him and his counsel and that the state's actions "have an effect on both [Mr. Keenan's] cases having any hopes of a positive outcome in Maine District VII"—the court where his criminal trespass case was brought—"and now the whole state." Judicial Review Request, Ex. A at 4. He "ask[s] to continue [their] professional counsel client status" as they were putting trial witnesses together and readying for the clerk to "set a trial date with the criminal case."  Judicial Review Request, Ex. A at 4.

To the extent that the Plaintiff requests this Court's interference with the State of Maine's disciplinary action against Attorney Fenstermaker and its effect on Mr. Keenan's pending state criminal case, his appeal is barred by the *Rooker-Feldman* doctrine, which prevents lower federal courts from exercising appellate jurisdiction over a final state-court judgment such as an attorney suspension order. *See McKenna v. Curtin*, 869 F.3d 44, 47–49 (1st Cir. 2017) (dismissing suspended attorney's claims in federal court because his suspension order fell "squarely within the definition of a final state-court judgment that is insulated from federal district court review by the *Rooker-Feldman* doctrine").

His request for review relating to the civil case pending before me and Chief Judge Levy's order suspending Attorney Fenstermaker fares no better. For starters, Mr. Keenan does not have standing to challenge the suspension order of Attorney Fenstermaker. Moreover, Judge Levy conducted Attorney Fenstermaker's disciplinary proceedings in accordance with Rule 83.3 of the Local Rules for the District of Maine. Under Local Rule 83.3(c)(2), when this Court receives a certified

copy of a judgment demonstrating that an attorney admitted to the bar of this Court has been suspended by a court of any state, this Court may, in its discretion, enter an order immediately suspending the attorney from practice. D. Me. Local R. 83.3(c)(2). The Rule provides that "the identical discipline" shall be imposed "unless the respondent-attorney demonstrates, or this Court finds, that the record in the other jurisdiction clearly shows" one of four listed circumstances. D. Me. Local R. 83.3(c)(6).

In Attorney Fenstermaker's case, the Court held a hearing and accepted written submissions, in which Attorney Fenstermaker argued that his suspension met several of the four listed circumstances. Judge Levy found that Attorney Fenstermaker had not met his burden of demonstrating that the federal court's imposition of substantially similar discipline was unwarranted. JDL Order 1, 7–13. Relevant to Mr. Keenan's Judicial Review Request, Judge Levy expressly addressed Attorney Fenstermaker's argument that suspending him would result in a "grave injustice" to his clients with active federal cases, including Mr. Keenan. JDL Order 10–12. Judge Levy noted that "the potential prejudice to existing clients from having an attorney suspended is present in most, if not every, case in which an attorney is suspended from practice." JDL Order 11. Further, he observed that Attorney "Fenstermaker's assertion that 'no attorney is going to touch those matters after Fenstermaker's treatment,' No. 2:23-cv-00174-JDL, ECF No. 3 at 15, is no more than mere speculation." JDL Order 11. Judge Levy likewise concluded that Attorney Fenstermaker failed to show that his state suspension was imposed to prevent him from litigating Mr. Keenan's case and another civil case pending in this Court. JDL

Order 11–12. Having concluded that Attorney Fenstermaker failed to show that identical discipline should not be imposed, Judge Levy left in effect Attorney Fenstermaker's suspension from practice in this Court.

Our Local Rules provide no mechanism for appealing such a disciplinary action against an attorney. Even if they did, I see no reason to disturb Chief Judge Levy's findings and conclusions. Mr. Keenan's request for judicial review of Attorney Fenstermaker's suspension order is therefore denied.

## II.   The Defendants' Motions to Dismiss

### A.   Legal Standard

Federal Rule of Civil Procedure 12(b)(6) "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), 'a complaint must provide a short and plain statement of the claim showing that the pleader is entitled to relief,' with 'enough factual detail to make the asserted claim plausible on its face.' " *Legal Sea Foods, LLC v. Strathmore Ins. Co.*, 36 F.4th 29, 33 (1st Cir. 2022) (quoting *Cardigan Mountain Sch. v. N.H. Ins. Co.*, 787 F.3d 82, 84 (1st Cir. 2015)). This is a "make-or-break standard." *Sepúlveda-Villarini v. Dep't of Educ. of P.R.*, 628 F.3d 25, 29 (1st Cir. 2010). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Plausible" means "more than merely possible." *Germanowski v. Harris*, 854 F.3d 68, 71 (1st Cir. 2017) (quoting *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012)).

11

While I take as true all well-pleaded facts in the complaint and draw all reasonable inferences in the plaintiff's favor, I do not credit "conclusory legal allegations" or "factual allegations that are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture." *Legal Sea Foods*, 36 F.4th at 33–34 (citations and internal quotation marks omitted). "While a *pro se* complaint is held to less stringent standards than one drafted by an attorney, courts need not conjure up unpleaded facts to support conclusory allegations." *Cote v. Murphy*, 152 F. App'x 6, 7 (1st Cir. 2005).[6]

## B.    State Defendants' Motion to Dismiss

The State Defendants argue that I should abstain under the *Younger* abstention doctrine from deciding Mr. Keenan's claims against them. Additionally, they contend that the State Defendants are immune from suits for damages under the Eleventh Amendment, and that Mr. Keenan has failed to state a claim against the State Defendants. State's MTD 1–2.

### 1.    *Younger* Abstention

I address the State Defendants' threshold argument—that pursuant to the *Younger* doctrine the Court should abstain from deciding Mr. Keenan's claims—first because "*Younger* abstention, when it applies, is mandatory." *Christian Action Network v. Maine*, 679 F. Supp. 2d 140, 149–50 (D. Me. 2010). The State Defendants maintain that abstention under *Younger v. Harris*, 401 U.S. 37 (1971), is appropriate

---

[6]    Mr. Keenan's complaint was signed and filed by his attorney, and he was represented by counsel through some, but not all, of the briefing on the three motions before me. I have thus applied the relevant pro se standards where appropriate.

because adjudicating Mr. Keenan's civil complaint here in federal court could interfere with the state criminal trespass proceeding pending against him. State's MTD 6.

In a nutshell, *Younger* abstention is the idea that "principles of equity and comity" require that a federal court "abstain from entertaining a suit that seeks to enjoin a state criminal prosecution as violative of federal law so long as the state proceeding affords an adequate opportunity to raise the federal defense and abstention will not cause irreparable harm." *Sirva Relocation, LLC v. Richie*, 794 F.3d 185, 191–92 (1st Cir. 2015) (citing *Younger*, 401 U.S. at 43–46). The same comity and federalism principles apply to a federal court's ability to grant declaratory relief. *Id.* at 192 (citing *Samuels v. Mackell*, 401 U.S. 66, 69–70, 72–73 (1971)). "Abstention is based upon the theory that 'the accused should first set up and rely upon his defense in the state courts . . . unless it plainly appears that this course would not afford adequate protection.'" *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 435 (1982) (quoting *Younger*, 401 U.S. at 45).

From *Younger* and its progeny, the First Circuit has distilled a three-step approach to the abstention analysis:

> To begin, a federal court must ascertain whether a particular state proceeding falls within the *Younger* taxonomy. If so, the court must then take the second step and consider whether the *Middlesex* factors support abstention. And if these two steps leave the case on track for abstention, the court must take the third step and determine whether any of the isthmian exceptions to the *Younger* doctrine apply.

*Sirva Relocation*, 794 F.3d at 192–93. If a case satisfies all three steps of the *Younger* analysis, federal courts must abstain from exercising jurisdiction even if the plaintiff

asserts that important federal rights are at stake. *See In re Justices of Superior Ct. Dep't of Mass. Trial Ct.*, 218 F.3d 11, 17 (1st Cir. 2000).

Step one is satisfied here. Only three types of state proceedings fit within the *Younger* taxonomy and trigger abstention: "(i) criminal prosecutions, (ii) 'civil proceedings that are akin to criminal prosecutions,' and (iii) proceedings 'that implicate a State's interest in enforcing the orders and judgments of its courts.'" *Sirva Relocation*, 794 F.3d at 192 (quoting *Sprint Commc'ns, Inc. v. Jacobs,* 571 U.S. 69, 72–73 (2013)). If a proceeding does not fit within this framework, *Younger* abstention is not appropriate. Here, the state proceeding against Mr. Keenan for trespass on Town Hall property falls within the *Younger* taxonomy because it is a state criminal prosecution for trespass.

Moving on to step two, the three *Middlesex* factors support abstention. Under *Middlesex*, a federal court must abstain when the requested relief would (a) interfere with an ongoing state judicial proceeding, (b) which implicates important state interests and (c) provides an adequate opportunity to raise constitutional challenges. 457 U.S. at 432. Here, Mr. Keenan's state criminal trespass prosecution is an ongoing judicial proceeding and granting him the relief he requests in federal court would interfere with the state matter.[7] I find interference because, if Mr. Keenan obtained the injunctive and declaratory relief he is requesting—a determination that the

---

[7]      "In determining whether federal proceedings would interfere with *ongoing* state proceedings, the proper point of reference is the date plaintiff filed his federal complaint." *Bettencourt v. Bd. of Registration in Med.*, 904 F.2d 772, 777 (1st Cir. 1990). Here, the state proceedings began on March 17, 2022, with the filing of the criminal trespass complaint, and they were ongoing when Mr. Keenan filed his federal complaint on January 31, 2023. *See* Compl. ¶ 38 ("The Criminal Trespass matter against Plaintiff is still pending.").

Defendants' actions underlying the trespass notice and resulting prosecution violated his constitutionally protected rights—then he "will essentially have obtained a judgment that the continuation of the state proceeding against [him] violates [his] due process rights," which "is interference for *Younger* purposes." *Rossi v. Gemma*, 489 F.3d 26, 35 (1st Cir. 2007). The same holds true for Mr. Keenan's request for damages. The First Circuit has "recognized that a § 1983 damages award may interfere with a state proceeding because it can have the same practical effect as a declaratory judgment: the federal court has produced a ruling on the merits that the federal plaintiff can then use to alter the state proceeding." *Id.* at 37.

As to whether an important state interest is implicated, "*Younger* itself settled the importance of the state's interest in criminal proceedings." *Davis v. Lansing*, 851 F.2d 72, 76 (2d Cir. 1988). Specifically, the pending trespass prosecution against Mr. Keenan implicates the state's interest in promoting public safety and retaining authority over state criminal proceedings. *See, e.g.*, *Stuart v. City of Scottsdale*, No. CV-17-01848-PHX-DJH, 2018 WL 11590045, at *4 (D. Ariz. Sept. 27, 2018) (finding important state interests were implicated where there was a pending state criminal trespass action against the plaintiff based on his actions at the city council meeting at issue in his federal lawsuit).

Further, Mr. Keenan is able to assert his constitutional claims as a defense to the trespass prosecution—indeed, it appears he already has raised the constitutionality of the no-trespass notice as a defense in that case[8]—and I trust that

---

[8]    See Exhibit B to the State's motion to dismiss (ECF No. 12-2), which is a copy of Mr. Keenan's motion to dismiss in his state criminal proceeding. In this motion, he seeks dismissal on the grounds

the state court hearing those constitutional challenges will consider them just as ably as I would. *See Middlesex*, 457 U.S. at 431 ("Minimal respect for the state processes, of course, precludes any *presumption* that the state courts will not safeguard federal constitutional rights."); *Casa Marie, Inc. v. Superior Ct. of P.R. for Dist. of Arecibo*, 988 F.2d 252, 262 (1st Cir. 1993) ("Except in the most extraordinary cases, a federal court must presume that state courts, consistent with the imperatives of the Supremacy Clause, *see* U.S. Const. art. VI, are fully competent to adjudicate federal constitutional and statutory claims properly presented by the parties."). Therefore, the *Middlesex* factors are met.

The last step in the analysis is determining whether any of the narrow exceptions to the *Younger* doctrine apply. Federal courts can intervene in state court proceedings only where a plaintiff can show there is no opportunity to raise the federal issues in a state court, a challenged state statute is "flagrantly and patently violative of express constitutional prohibitions in every clause," or "when a state proceeding is brought in bad faith, that is, for the purpose of harassment." *Sirva Relocation*, 794 F.3d at 192 (citing *Younger,* 401 U.S. at 53–54). Mr. Keenan has not alleged that any of those narrow exceptions are present here. Absent such extraordinary circumstances, *Younger* abstention is mandatory, not discretionary. *Rio Grande Cmty. Health Ctr., Inc. v. Rullan*, 397 F.3d 56, 68 (1st Cir. 2005).

---

that the Trespass Notice was issued in violation of his federal and state due process, liberty, and free speech rights under the First and Fourteenth Amendments to the United States Constitution and Article I, Sections 4, 6-A and 15 of the Constitution of Maine.

Because an ongoing state criminal trespass proceeding was initiated against Mr. Keenan several months before he launched this lawsuit based on the constitutionality of the trespass notice, and because Mr. Keenan has not shown that the state prosecution prevents the presentation of his constitutional arguments or that one of the *Younger* exceptions applies, I must abstain.

"Ordinarily, a decision to abstain under *Younger* results in a dismissal of the federal action." *Bettencourt v. Bd. of Registration in Med.*, 904 F.2d 772, 781 (1st Cir. 1990). But Mr. Keenan also seeks damages on his § 1983 claims, and the appropriate course of action for his damages claim is different. "When a court orders abstention on a damages claim, it ordinarily may only stay the action, rather than dismiss the action in its entirety." *Rossi*, 489 F.3d at 38 (citing *Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 731 (1996)); *see also Deakins v. Monaghan*, 484 U.S. 193, 202 (1988) (holding that "even if the *Younger* doctrine requires abstention . . ., the District Court has no discretion to dismiss rather than to stay claims for monetary relief that cannot be redressed in the state proceeding"); *Landrigan v. City of Warwick*, 628 F.2d 736, 743 (1st Cir. 1980) (holding that a plaintiff's § 1983 action based on his alleged illegal arrest "should be stayed pending final determination in the state court system of the charge resulting from that arrest"). Thus, while I must dismiss Mr. Keenan's claims to the extent that they seek injunctive and declaratory relief, under *Younger* I may only stay the damages-seeking remainder of this action because the criminal trespass proceeding against Mr. Keenan in state court does not involve a claim for damages.

Where other grounds exist for dismissing the federal damages claims, however, I may address them. *See Bettencourt*, 904 F.2d at 781 ("[W]e do not order a stay of plaintiff's damages claims, because other grounds exist for upholding the district court's dismissal of them."). I therefore turn to the State Defendants' remaining arguments.

### 2.    Sovereign Immunity

The State Defendants argue that Eleventh Amendment sovereign immunity precludes Mr. Keenan's claims for damages against the Maine State Police and Trooper Endre. State's MTD 8–9. Due to the protections of the Eleventh Amendment, "neither a state agency nor a state official acting in his official capacity may be sued for damages in a section 1983 action." *Wang v. N.H. Bd. of Registration in Med.,* 55 F.3d 698, 700 (1st Cir. 1995) (quoting *Johnson v. Rodriguez*, 943 F.2d 104, 108 (1st Cir. 1991)); *see Poirier v. Mass. Dep't of Corr.*, 558 F.3d 92, 97 (1st Cir. 2009) ("States and their agencies are entitled to sovereign immunity 'regardless of the relief sought.' " (quoting *Kentucky v. Graham,* 473 U.S. 159, 167 n.14 (1985))). This sovereign immunity is a "personal privilege" that a state may voluntarily waive "by making a 'clear declaration that it intends to submit itself to the jurisdiction of the federal courts.' " *Arecibo Cmty. Health Care, Inc. v. Puerto Rico*, 270 F.3d 17, 24 (1st Cir. 2001) (quoting *Clark v. Barnard*, 108 U.S. 436, 447 (1883), then *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.,* 527 U.S. 666, 676 (1999)). "[T]he test for determining whether a State has waived its immunity from federal-court jurisdiction is a stringent one." *Id.* (citation and internal quotation marks omitted). "[I]n order for a state statute or constitutional provision to constitute a waiver of

Eleventh Amendment immunity, it must specify the state's intention to subject itself to suit in federal court." *Id.* (quoting *Acevedo López v. Police Dep't of P.R.,* 247 F.3d 26, 28 (1st Cir. 2001)). As to constitutional claims brought pursuant to 42 U.S.C. § 1983, "the Supreme Court has made it clear that Congress never intended § 1983 to override the states' traditional Eleventh Amendment immunity." *Grenier ex rel. Grenier v. Kennebec Cnty., Me.*, 733 F. Supp. 455, 459 (D. Me. 1990) (citing *Quern v. Jordan,* 440 U.S. 332, 341–45 (1979)).

Here, Defendant Maine State Police is protected by the State's sovereign immunity because it is an agency of the State of Maine. *See Palm v. Maine*, No. CIV. 07-102-P-H, 2007 WL 4375223, at *1 (D. Me. Dec. 13, 2007) ("The State of Maine cannot be sued in this Court because it is cloaked by sovereign immunity, immunity that extends to the Maine State Police as a state agency."), *R. & R. adopted by* 532 F. Supp. 2d 198. Neither Congress nor Maine has waived this sovereign immunity because § 1983 and the Maine Civil Rights Act only create a cause of action against any "person" who violates a plaintiff's constitutional rights, and the Supreme Court instructs that a state is not a person in this context. *See Will v. Mich. Dep't of State Police,* 491 U.S. 58, 71 (1989) (holding that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983"). The claims against the Maine State Police therefore must be dismissed.

As to the claims against Trooper Endre, state employees sued in their official capacities are immune from lawsuits seeking money damages. *See Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997) ("[W]hen the action is in essence one for

the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants."); *see also Will*, 491 U.S. at 71. But the Eleventh Amendment does not bar suits for monetary relief against state officials in their individual capacities. *See Haidak v. Univ. of Mass.-Amherst*, 933 F.3d 56, 76 (1st Cir. 2019). Here, the Complaint does not state whether Trooper Endre has been named in his official capacity, his individual capacity, or both. Giving Mr. Keenan the benefit of all reasonable inferences, I will assume that he names Trooper Endre in both his official and individual capacities. Thus, although the Eleventh Amendment shields Trooper Endre from suit in his official capacity, it does not protect him from Mr. Keenan's claims against him in his individual capacity. Only the claims against the Maine State Police and the official-capacity claims against Trooper Endre are entitled to dismissal on sovereign immunity grounds. So I turn to whether Mr. Keenan has sufficiently pleaded a survivable claim against Trooper Endre individually.

### 3.    Qualified Immunity

The State Defendants maintain that Trooper Endre is entitled to qualified immunity from any claim asserted against him in his individual capacity. State's MTD 16–17. "The doctrine of qualified immunity shields officers from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Est. of Rahim by Rahim v. Doe*, 51 F.4th 402, 410 (1st Cir. 2022) (quoting *City of Tahlequah v. Bond*, 595 U.S. 9, 12 (2021) (per curiam)). It protects "all but the plainly incompetent or those who

20

knowingly violate the law." *Id.* (quoting *Dist. of Columbia v. Wesby*, 583 U.S. 48, 63 (2018)). Under the qualified immunity doctrine, a government official sued in his individual capacity for money damages is immune from liability unless the plaintiff shows that " '(1) [he] violated a federal statutory or constitutional right, and (2) the unlawfulness of [his] conduct was clearly established at the time.' " *Irish v. Fowler*, 979 F.3d 65, 76 (1st Cir. 2020) (quoting *Wesby*, 583 U.S. at 63).

In deciding a qualified immunity claim at the motion to dismiss stage, "the facts as alleged in the complaint control." *Dirrane v. Brookline Police Dep't* 315 F.3d 65, 69 n.2 (1st Cir. 2002). The Complaint contains only two references to actions taken by Trooper Endre: (1) that he served the Trespass Notice on Mr. Keenan, Compl. ¶ 25, and (2) that he responded to the Town Hall on Election Day in November of 2021 at the request of Town Manager Tozier, Compl. ¶ 33.[9] With these allegations, Mr. Keenan fails to allege that Trooper Endre violated a federal statutory or constitutional right, and thus the qualified immunity analysis stops at the first step.[10] Trooper Endre is entitled to qualified immunity and the claims against him in his individual capacity are dismissed.

---

[9]     In his opposition to the State's motion to dismiss, Mr. Keenan offers additional details about Trooper Endre's involvement with the trespass notice and his presence at a Town meeting and during an election. *See* Resp. to State of Maine Mot. to Dismiss ("**Pl.'s Opp'n to State's MTD**") 4–5, 7–12 (ECF No. 17). Mr. Keenan was represented by counsel when he filed his Complaint, and he could have included these allegations in his Complaint but did not. I therefore do not consider them. *See, e.g.*, *Winne v. Nat'l Collegiate Student Loan Tr. 2005-1*, No. 1:16-cv-00229-JDL, 2017 WL 3573813, at *6 (D. Me. Aug. 17, 2017) ("Factual allegations made for the first time in a responsive memorandum are not properly considered in evaluating the sufficiency of a complaint under Rule 12(b)(6).").

[10]     I am cognizant that the qualified immunity defense is often a poor fit at the Rule 12(b)(6) motion to dismiss phase. *See, e.g.*, *Irish v. Maine*, 849 F.3d 521, 523 (1st Cir. 2017) (vacating dismissal based on qualified immunity on a 12(b)(6) motion where the complaint articulated a clearly established constitutional violation, albeit in bare-bones fashion, and additional facts could shed light on qualified

### C.      Town's Motion to Dismiss

Mr. Keenan's claims against the Town, like his claims against the State Defendants, challenge the issuance and enforcement of the trespass notice. Abstention principles thus apply with equal force to the claims against the Town. And while the Town did not raise *Younger* abstention in its motion to dismiss, I may consider it sua sponte. *See Guillemard-Ginorio v. Contreras-Gómez*, 585 F.3d 508, 517–18 (1st Cir. 2009). For the reasons described above on the State's Motion, I also grant the Town's motion to dismiss all claims based on *Younger* abstention, insofar as Mr. Keenan seeks equitable relief. Unlike the State Defendants' briefing, I do not have the benefit of briefing from the Town focused on whether the damages-seeking portions of Mr. Keenan's claims survive a motion to dismiss. Nonetheless, I will proceed through the merits of the Town's motion.

As described above, Mr. Keenan asserts violations of his constitutional rights under 42 U.S.C. § 1983.[11] The required elements of a § 1983 claim are: (1) "that the conduct complained of has been committed under color of state law," and (2) "that this conduct worked a denial of rights secured by the Constitution or laws of the United States." *Finamore v. Miglionico*, 15 F.4th 52, 58 (1st Cir. 2021) (internal quotations omitted). The Town asserts that Mr. Keenan's claims fail on both of these necessary elements and should therefore be dismissed.

---

immunity analysis). But here, the Complaint simply does not plausibly allege any constitutional violation by Trooper Endre, and thus qualified immunity is appropriate.

[11]     Mr. Keenan also alleges companion state constitutional claims through 5 M.R.S. § 4682.

### 1.    Color of State Law

Each count of Mr. Keenan's Complaint challenges the constitutionality of the issuance and enforcement of the trespass notice. Compl. ¶¶ 39–134. Accordingly, the first question I must answer is whether that conduct was committed under color of state law, such that municipal liability may attach to the Town.

Municipal liability may attach under § 1983 if the conduct alleged to be unconstitutional "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [the municipality's] officers." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). Put differently, *Monell* liability concerns "acts which the municipality has officially sanctioned or ordered." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986). This standard may be met "by showing that the alleged constitutional injury was caused by a formal decision of a municipal legislative body or by a person with final policymaking authority." *Welch v. Ciampa*, 542 F.3d 927, 941 (1st Cir. 2008) (internal citation omitted). *Monell* liability may also attach if an authorized policymaker ratifies a subordinate's decision. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) ("If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final.").

Mr. Keenan alleges that the Town refused to place an item from Mr. Keenan on the select board meeting agenda. Then, when Mr. Keenan tried to participate in the public comment portion of the select board meeting conducted over Zoom, the moderator disabled his audio. Next, when he went in person to Town Hall to present a written list of questions he had intended to ask during the meeting, a Town

23

selectman called law enforcement. Shortly after Mr. Keenan left Town Hall, Trooper Endre came to Mr. Keenan's house and served him a trespass notice barring him from Town Hall. The Town is the owner of Town Hall, which gives it authority to exclude people from the property under Maine's criminal trespass law.[12] Finally, Mr. Keenan alleges that on several occasions he went to Town Hall and was denied access by town officials.

Although the Town points out that it was the Maine State Police that issued the trespass notice rather than the Town, based on Mr. Keenan's allegations, it is reasonable to infer that both the trespass notice and its enforcement were requested by the Town through someone with final policymaking authority. *See generally Bernstein v. Sims*, 643 F. Supp. 3d 578, 587–88 (E.D.N.C. 2022) (holding that plaintiff sufficiently alleged that director of elections acted as final policymaker in issuing trespass notice where he either had such authority by law or his actions were ratified by the full board); *Cyr v. Addison Rutland Supervisory Union*, 60 F. Supp. 3d 536, 553–56 (D. Vt. 2014) (holding school superintendent acted as a final policymaker when issuing notice of trespass barring parent from school property where school board delegated authority to superintendent). The trespass notice was issued immediately following a Town selectman's call to law enforcement after an unwelcome appearance by Mr. Keenan at Town Hall. As Mr. Keenan explains, he is not privy to who exactly asked for the trespass notice at this early stage of the case,

---

[12]    *See* Compl. Ex. B. (ECF No. 1-2) (Criminal Trespass Complaint against Mr. Keenan for violation of 17-A M.R.S. § 402(1)(E), identifying the Town as "the owner or other authorized person" for the property).

but he will have the opportunity to develop that information further in discovery. Pl.'s Resp. to Def. Town of Sullivan's Mot. to Dismiss ("**Pl.'s Opp'n to Town's MTD**") 8 (ECF No. 8). For present purposes, it is enough that he has plausibly alleged that the trespass order is attributable to and was enforced by the Town.

### 2.   Denial of Rights

I must next determine whether the procurement and/or enforcement of the trespass notice amounted to a denial of rights secured by the Constitution or laws of the United States. I take Mr. Keenan's First Amendment, substantive due process, procedural due process, and equal protection claims in turn.

### a.   First Amendment

As a result of the trespass order, Mr. Keenan alleges that he was prevented from entering Town Hall, in violation of his First Amendment rights to free speech, to free expression, and to petition the Town and its officials. Compl. ¶¶ 40–43.[13] Specifically, due to the trespass order, he was not permitted to attend a March 23, 2021 Town planning board meeting, and he was threatened with arrest when he did attend a June 8, 2021 Town meeting. Compl. ¶¶ 29, 32.

The evaluation of Mr. Keenan's First Amendment claim requires a three-step approach. The first step is to determine whether his claim involves speech protected by the First Amendment; the second step is to identify the nature of the forum; and the third step is to evaluate whether the rationale for exclusion satisfies the

---

[13]   Count I of the Complaint alleges violations of the First and Fourteenth Amendments of the United States Constitution. The First Amendment is applicable to the States through the Fourteenth Amendment. I interpret Count I as alleging First Amendment violations and its invocation of the Fourteenth Amendment as a reference to the First Amendment's applicability to the States.

applicable standard for that type of forum. *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 797 (1985).

As for the first step, based on the allegations in the Complaint, I can reasonably infer that Mr. Keenan sought to participate in Town meetings during the public comment portion on matters relevant to him as a Town resident. For example, he alleges previous participation in Town meetings where he made comments on Town spending and voting procedures. Compl. ¶¶ 10–11. This is protected speech. *See City of Madison, Joint Sch. Dist. No. 8 v. Wis. Emp. Rels. Comm'n*, 429 U.S. 167, 174–76 (1976) (holding that the First Amendment protects the rights of speakers at school board meetings that are opened for direct citizen involvement and permit public participation).

As to the nature of the forum, I can infer from the Complaint that the Town and planning board meetings Mr. Keenan was barred from attending were limited public forums.[14] This type of forum exists when public property has been opened for limited use "by certain groups or dedicated solely to the discussion of certain subjects." *Christian Legal Soc'y Chapter of the Univ. of Cal., Hastings Coll. of the L. v. Martinez*, 561 U.S. 661, 679 n.11 (2010) (internal quotation marks omitted). The Town asserts that the interior of the Town office is not a public forum at all. Town's MTD 6. A nonpublic forum is a "government-owned property that is not traditionally (or by designation) open for public communication." *McBreairty v. Sch. Bd. of RSU*

---

[14]     Discovery may alter this initial inference, for example if the meetings were not actually open to the public or public comment, or if participation was restricted to those with a legislative capacity that Mr. Keenan did not possess. *See, e.g., Curnin v. Town of Egremont*, 510 F.3d 24, 29 (1st Cir. 2007).

*22*, 616 F. Supp. 3d 79, 91 (D. Me. 2022). The Town is correct that interior work areas of public employees can be nonpublic fora. *See, e.g., Burrus v. Vegliante*, 336 F.3d 82, 91 (2d Cir. 2003). But Mr. Keenan's Complaint alleges that he was barred from attending Town meetings; he is not complaining about being excluded from interior Town Hall offices closed to the public. Pl.'s Opp'n to Town's MTD 5 n.1.

And finally, on the third step, the Town has not demonstrated that its rationale for exclusion satisfies the applicable standard for the type of forum. *See Cornelius*, 473 U.S. at 797. In a limited public forum, the government may restrict speech as long as the restriction (a) does "not discriminate against speech on the basis of viewpoint" and (b) is "reasonable in light of the purpose served by the forum*." Good News Club v. Milford Cent. Sch.*, 533 U.S. 98, 106–07 (2001) (internal quotation marks omitted). Here, Mr. Keenan has plausibly alleged that the Town restricted his speech because of his views. His complaint alleges resistance from Town officials for raising questions about financial decision-making, voting procedures, and moderating for Town meetings. Compl. ¶¶ 10–12, 16, 19–20. These allegations create an inference that it was Mr. Keenan's opinions and perspectives on these topics that led to his ban from Town Hall, not his inability to keep to the topics permitted in the limited public forum.[15] *See McBreairty*, 616 F. Supp. 3d at 93.

---

[15]     Discovery may also alter this initial inference, for example if the Town shows that it was Mr. Keenan's inability to limit his comments to the specific topics of the limited forum, rather than his opinions on any suitable topics, that led to the restriction on his speech. *See McBreairty v. Sch. Bd. of RSU 22*, 616 F. Supp. 3d 79, 93 (D. Me. 2022) (explaining that content discrimination may be permissible if it maintains the purpose of the limited public forum, whereas viewpoint discrimination—meaning, exclusion based on the speaker's opinion or perspective—is presumed impermissible). Mr. Keenan's claims challenge the trespass notice specifically, which Mr. Keenan alleges barred him from Town meetings and his polling place. My analysis would be different if, for

Mr. Keenan has also plausibly alleged that the Town's restriction—requesting the no-trespass notice and calling law enforcement when Mr. Keenan did appear at Town Hall—was not reasonable in light of the purpose served by the forum. At this stage of the case, I am not privy to why the Town barred Mr. Keenan from entering Town Hall for any purpose for an open-ended period of time. Although the Town hints at safety concerns, I am limited at the motion to dismiss stage to an assessment of the allegations, which I must accept as true. Without information about Mr. Keenan's behavior, it is impossible to assess the reasonableness of the Town's response, including whether there were other, less speech-restrictive ways to address the Town's concerns.[16] The Town bears the burden of justifying its restriction on speech. *United States v. Playboy Ent. Grp., Inc.*, 529 U.S. 803, 816 (2000). Mr. Keenan has alleged an open-ended ban on his attendance at any event at Town Hall. And the Town does not yet have any facts in the record on what conduct by Mr. Keenan led to this ban. The Town has not shown that its rationale for exclusion meets the applicable standard.

The Town's motion to dismiss Counts I & II is denied, insofar as Mr. Keenan seeks monetary relief for these claims.[17]

---

example, the adverse conduct his First Amendment claim challenged was the Town's refusal to add his proposed topics to a meeting agenda.

[16]   The Town asserts that the First Amendment does not prevent it from protecting its workforce and property from harm or disruptive conduct. Def. Town of Sullivan's Mot. to Dismiss Pl. Keenan's Compl. Pursuant to F.R.Civ.P. Rule 12(b)(6) ("**Town's MTD**") 9–10 (ECF No. 7). This argument may ultimately carry weight, *State v. Chiapetta*, 513 A.2d 831, 833 (Me. 1986), but at this stage of the case, I do not have access to what behavior by Mr. Keenan would have caused a threat of harm or disruption.

[17]   The Town did not separately address Mr. Keenan's state constitutional free speech claim. Because the Town bears the burden on its motion to dismiss, I decline to dismiss it.

### b.   Substantive Due Process Rights

Mr. Keenan brings substantive due process claims arising from violations of rights secured through the Fourteenth Amendment of the United States Constitution and Article I, Section 6-A of the Maine Constitution. Compl. ¶¶ 51–62, 75–86, 99–110. Particularly, he alleges violations of his liberty to petition, liberty to be present in a public place, and liberty to vote. Compl. ¶¶ 51–62, 75–86, 99–110. The Town's briefs do not develop any argument on Mr. Keenan's substantive due process claims. "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990). Thus, the Town's motion to dismiss Mr. Keenan's substantive due process claims, Counts III, IV, VII, VIII, XI, and XII, is denied, insofar as they seek monetary relief.[18]

### c.   Procedural Due Process Rights

Mr. Keenan alleges that the Town violated his procedural due process rights in violation of the Fourteenth Amendment of the United States Constitution and Article I, Section 6-A of the Maine Constitution. Compl. ¶¶ 63–74, 87–98, 111–22. Procedural due process claims call for a two-step analysis. The first question is "whether there exists a liberty or property interest which has been interfered with by

---

[18]   If discovery reveals that some of Mr. Keenan's substantive due process claims are duplicative of his First Amendment claims, then the Town may raise that argument at the appropriate time. *See generally Pantermoller v. Town of Fairfield*, No. 1:17-cv-00223-JDL, 2018 WL 1404402, at *3 (D. Me. Mar. 20, 2018) ("The Supreme Court has made clear that, 'where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing such a claim' . . . ." (quoting *Albright v. Oliver*, 510 U.S. 266, 273 (1994))).

the State." *González-Fuentes v. Molina*, 607 F.3d 864, 886 (1st Cir. 2010) (quoting *Ky. Dep't of Corrs. v. Thompson*, 490 U.S. 454, 460 (1989)). If the answer is yes, then the second question is "whether the procedures attendant upon that deprivation were constitutionally sufficient." *Id.* (quoting *Thompson*, 490 U.S. at 460).

On the first question, Mr. Keenan alleges that the issuance and enforcement of the trespass notice interfered with his liberty rights to petition, to be present in a public place, and to vote. The Town does not directly address whether these are indeed liberty interests, other than to concede that Mr. Keenan "has a liberty right to vote in his lawful polling place."[19] Def. Town of Sullivan's Reply ("**Town's Reply**") 5 (ECF No. 9). Because the Town bears the burden on its motion to dismiss, I will assume for purposes of this motion that Mr. Keenan has sufficiently alleged liberty interests.

On the second question, I must analyze what level of process is constitutionally required. This task requires balancing three factors: (1) the private interest affected; (2) "the risk of an erroneous deprivation of [that] interest through the procedures used," and the likely value, if any, of different or additional procedural safeguards; and (3) the government's interest, including burdens that different or additional

---

[19]     The Town argues that Mr. Keenan failed to allege that he did not vote, Town's MTD 5, 8–9, and further, that he had ways other than appearing in person at Town Hall to cast his ballot. Def. Town of Sullivan's Reply ("**Town's Reply**") 5 (ECF No. 9). Moreover, in his pro se response to the State Defendants' motion to dismiss, Mr. Keenan acknowledges that he did vote in the November 2021 election. Pl.'s Opp'n to State's MTD 5. But Mr. Keenan did not make any similar acknowledgment about his ability to vote in the Town Selectman election on June 8, 2021. Thus, drawing all reasonable inferences, his Complaint plausibly alleges that he was prevented from voting. *See* Compl. ¶¶ 30–31 (alleging that when he asked to vote in the June 8, 2021 election for Town Selectman, he was told to "call tomorrow," after the election would be over, and that when he requested a ballot later that day, the Acting Clerk told him, "[T]ough luck. You're not going to vote today. Call me tomorrow.").

procedural safeguards would impose. *Haidak*, 933 F.3d at 66 (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)). The Town does not specifically identify or engage with this multi-factor analysis. Instead, it merely asserts that Mr. Keenan could have challenged the trespass notice through Maine Rule of Civil Procedure 80B and that the Rule 80B process provides sufficient due process. Town's MTD 7.[20]

Rule 80B provides a procedural mechanism for review of government action, when review of that action by the Superior Court "is provided by statute or is otherwise available by law." Me. R. Civ. P. 80B(a). The Town concedes that review of trespass orders is not provided for by statute. Town's Reply 5. But the Town claims, without citation to any cases, that review of a trespass notice is "otherwise available at law" through an action for injunctive or declaratory relief. Town's Reply 6. The Plaintiff counters, also without authority on point, that trespass notices may not be reviewed under Rule 80B. Pl.'s Opp'n to Town's MTD 6–7. It is not clear to me that Rule 80B review is "otherwise available" under Maine law for criminal trespass notices.[21] Because the Town has failed to show that the Plaintiff had a right of review

---

[20]     The Town also asserts qualified immunity as a basis for dismissal of Mr. Keenan's procedural due process claims. Town's MTD 8. This defense applies to individuals, not municipalities. *Lachance v. Town of Charlton*, 990 F.3d 14, 30 (1st Cir. 2021). Mr. Keenan sued the Town, not any individual Town officials, so this defense is inapplicable. In addition, the Town raises legislative immunity, Town's MTD 8, but does not sufficiently develop how that defense would apply to the issuance and enforcement of the trespass notice.

[21]     The availability of Rule 80B review when not authorized by statute requires considerable analysis. As the Advisory Committee Notes make clear:

> appropriate review is "otherwise available by law" under Rule 80B if it is within either (1) the traditional scope of review of one of the extraordinary writs as determined by the direct application of prior authority delineating that scope of review in cases comparable to that before the court; or (2) a common-law extension of the scope of review of one of the extraordinary writs to a case not previously held to be within it. In determining whether to make such an extension, the court must address the basic policy question whether nonstatutory judicial review of executive action in the

under Rule 80B and that such review, if available, would be constitutionally sufficient, the Town's Motion to Dismiss Mr. Keenan's procedural due process claims, Counts V, VI, IX, X, XIII, and XIV, is denied, insofar as Mr. Keenan seeks monetary relief.

### d.    Equal Protection

Mr. Keenan alleges that the issuance and enforcement of the Trespass Notice violated his federal and state constitutional rights to equal protection of the law. Compl. ¶¶ 123–34. He advances a "class of one" equal protection theory, meaning that the Town "singled him out for differential treatment for reasons unique to him, rather than because of his membership in any group." *Snyder v. Gaudet*, 756 F.3d 30, 34 (1st Cir. 2014). For these claims to succeed, "a similarly situated, but differently treated, comparator is essential." *Id.*

Mr. Keenan's Complaint fails to identify any comparators. Instead, it simply repeats the conclusory allegation that he was treated "in direct contrast to those similarly situated," Compl. ¶¶ 124–27, 130–33, without identifying any facts to

---

particular situation is appropriate in light of the necessary deference which a reviewing court must show, both to the proper scope to be allowed to executive action in its own sphere and to the intention of the legislature in setting up the statutory scheme under which the executive agency acts.

Me. R. Civ. P. 80B advisory committee notes to Feb. 15, 1983 Order Amending Rule 80B. The Defendant offers no discussion of whether the review of a decision to issue a trespass notice was traditionally reviewable under one of the extraordinary writs. After cursory review of the cases that have used Rule 80B, I could find none that allowed an appeal of a discretionary act such as the issuance of a trespass notice. And despite the Town's unsupported assertion that "[e]ven if something is discretionary that discretion is subject to review of the abuse of discretion," Town's Reply 6, my review of the cases suggests that "courts will not grant mandamus to compel the performance of a discretionary act or in any way control the outcome of the deliberative process." *Casco N. Bank, N.A. v. Bd. of Trs. of Van Buren Hosp. Dist.*, 601 A.2d 1085, 1087 (Me. 1992) (citing cases). Suffice it to say that whether Rule 80B provides a procedural mechanism to review the Town's decision to issue a Trespass Notice is anything but self-evident.

support that assertion. This absence is fatal to his equal protection claim. *See Back Beach Neighbors Comm. v. Town of Rockport*, 63 F.4th 126, 132 (1st Cir. 2023) (affirming dismissal of class-of-one equal protection claim under Rule 12(b)(6) where the plaintiff failed to "plausibly allege[ ] the existence of similarly situated comparators"). Accordingly, the Town's Motion to Dismiss Counts XV and XVI is granted.[22]

## CONCLUSION

For the reasons stated above, the Court **DENIES** the Plaintiff's Motion for Judicial Review (ECF No. 10). The Court **GRANTS** the State Defendants' Motion to Dismiss (ECF No. 12), and Defendants Maine State Police and Gavin Endre are hereby dismissed from this action. The Court **GRANTS** the Town's Motion to Dismiss (ECF No. 7) as to Counts XV and XVI and as to Counts I–XIV insofar as they seek equitable relief and **DENIES** the Town's Motion to Dismiss as to Counts I–XIV insofar as they seek damages.

SO ORDERED.

/s/ Nancy Torresen
United States District Judge

Dated this 29th day of September, 2023.

---

[22]     The parties did not distinguish between the state and federal constitutional claims in their briefs, and so I follow suit. In any event, the Law Court has explained that the equal protection rights afforded under the United States and Maine constitutions are "coextensive." *In re D.P.*, 2013 ME 40, ¶ 10 n.4, 65 A.3d 1216.